ROBERT ROUSE and MARGARET LEWIS ROUSE, Trustees under the WILL OF J. C. LEWIS, deceased; ROBERT ROUSE and wife, MARGARET LEWIS ROUSE, individually, and NORA MAE SUTTON LEWIS v. WILLIAM W. KENNEDY and wife, META MAE KENNEDY.

(Filed 18 September 1963.)

Trusts § 6— Precatory words will not be given mandatory effect so as to preclude use of best judgment in exercise of discretionary powers.

Where the trustees of a testamentary trust are given broad powers to hold and dispose of lands in accordance with their best judgment, and are empowered to sell the realty of the trust if necessary to carry out the purpose of the trust, provisions of the will that it was testator's "wish and desire" that if sale of realty became necessary a designated tract be first sold, held not to preclude the trustees from first selling a portion of another tract when such sale is rendered more feasible and desirable because of the location of a hard surfaced road and school near thereto, since the precatory words will be given their commonly accepted sense and will not be artifically construed by the court as embodying a mandatory condition.

Appeal by defendants from Bone, Emergency Judge, May Term 1963 of Lenoir.

This is a controversy without action. The findings of fact and the conclusions of law are as follows:

"1. That J. C. Lewis, late of Lenoir County, died in December 1959, leaving a last will which was duly probated and appears of record in the office of the Clerk of Superior Court of Lenoir County in Record of Wills I, at page 338. That Robert Rouse and his wife, Margaret Lewis Rouse the said Margaret Lewis Rouse being the only child of J. C. Lewis, deceased, were appointed as Co-Executor and Executrix of the estate of said deceased, and issued letters testamentary as such by the Clerk of the Superior Court of Lenior County on January 5, 1960, and have fully administered said estate and filed their final account on February 28, 1961, and that the personal property of said estate was amply sufficient to pay the debts of the estate. That the said J. C. Lewis left surviving him his widow, Nora Mae Sutton Lewis, and his said daughter, Margaret Lewis Rouse, who are named as the legatees, devisees, and beneficiaries of the estate of said deceased in his aforesaid will, both of whom are of lawful age.

"2. That the said testator at the time of his death was seized in fee simple of three tracts of land situate in Lenoir County, as follows:

"(a) Tract in Southwest Township described as the 'Homeplace' on which testator lived, containing 38 acres.

"(b)  Tract in Southwest Township, described as 'Lettie Taylor Place,' containing 68 acres.

"(c)  Tracts in Woodington Township described as the 'Harris Place,' containing 60 acres.

"3.  That the above described three tracts of land were devised under Item V of the will of J. C. Lewis, deceased, to his son-in-law, Robert Rouse, and his daughter, Margaret Lewis Rouse, as Co-Trustees, with full general powers in their best judgment and discretion to hold, manage, and dispose of said lands for the uses and purposes set forth in Item V of said will creating said trust estate.

"4.  That the Trustees since the final account of the Executors was filed, have administered the trust estate as authorized and directed therein, and the principal assets of the trust estate consist of the three tracts of land hereinabove described and the income of the trust estate is derived from rents in the operation of said farm lands, which rents for the years 1961 and 1962 have been less than the sum of $1800.00.

"5.  That Section B, Section 1 of Item V of said will, the Trustees are directed to pay to Nora Mae Sutton Lewis, widow of the testator, during her lifetime or until her remarriage, from the net income of said trust estate the sum of $1,800.00 annually, and if the said income does not amount to said sum the Trustees are authorized to pay from the principal of the trust estate such additional amounts as may be necessary to pay the annual income to said beneficiary of $1,800.00, and subject to said provisions, the remaining income from said trust estate is directed to be paid to Margaret Lewis Rouse. That after the death or remarriage of Nora Mae Sutton Lewis, the trust estate terminates, and the remaining trust estate, both principal and accumulated income, is directed to be paid to the said Margaret Lewis Rouse, daughter, free and discharged of the trust.

"6.  That in addition to the general powers and authority given the Trustees in handling the said trust estate, they were given the specific authority and direction as follows in Section A of Item V:

" '2.  To retain the properties now or hereafter received by my said Trustees, or dispose of them as and when they shall deem advisable, by public or private sale, or exchange, or otherwise for cash, or upon credit, or partly for cash and partly for credit, and upon such terms and conditions as they shall deem proper; to subdivide and develop said property, or any part thereof into subdivisions for the sale of lots. In connection herewith, it is my express wish and desire that my

Trustees shall retain my farm lands herein referred to, as long as it is bringing in adequate rental income for the purposes of this trust, and that the same not be sold by my said Trustees until it is necessary in their best judgment and discretion that said farm or portions thereof be subdivided and sold so that the proceeds can be reinvested in a more profitable and better manner to yield the best income and enable my Trustees to carry out the purposes of this trust, and be of the most benefit to the beneficiaries of this trust. If it becomes necessary in the judgment of my Trustees to sell any of the real estate, it is my wish and desire that the farm lands known as the "Harris Place" be first sold to provide the necessary funds to carry out the purposes of this trust.'

"7. That the said Trustees in performance of their duties as directed under the provisions of said will and in the use of their best judgment and discretion to provide adequate income from the trust estate to be of the most benefit to the beneficiaries of the trust, caused a survey and map to be made of a subdivision into lots of a portion of the lands held in trust known as the 'Homeplace,' and located on N. C. paved Highway 58 and situate across the highway from Southwood School, which is one of Lenoir County's consolidated schools, which said map appears of record in Map Book 9, at page 17, of the Public Registry of Lenoir County, and which subdivision contains fifteen residential lots. That in the opinion of the Trustees in the use of their sound judgment and discretion, the subdivision made by them of the portion of the Homeplace is the most practical to provide for sale for their best value, ready available lots, and the proceeds from said sales to be reinvested as provided by the trust estate to produce adequate income and to carry out the provisions of the trust for the best interest and benefit of the beneficiaries, and the preservation of the said trust estate.

"8. That the said Trustees have agreed to sell to William W. Kennedy and wife, Meta Mae Kennedy, Lot No. 3 as shown on said map of subdivision, for the cash purchase price of $1500.00, and the said proposed purchasers have agreed to purchase the said lot and are ready, able, and willing to pay the purchase price in cash and accept deed conveying to them a good marketable title in fee simple thereto. That the Trustees have tendered to the proposed purchasers a duly executed and acknowledged deed purporting to convey to them a good marketable title in fee simple to said lot, and demanded the purchase price therefor, said deed being dated May 10, 1963, and that the proposed purchasers have refused to accept the deed as tendered and

pay the purchase price, contending that the deed as tendered does not convey to them a good marketable title in fee simple under the authority and direction given the Trustees in the Will of J. C. Lewis, deceased.

"Upon the foregoing findings of fact and the agreed statement of facts, with exhibits attached thereto, including the Will of the deceased and the deed as tendered, the court is of the opinion and now holds that the said Trustees are devised a good marketable title in fee simple to the lands described in the will of the deceased creating said trust estate, and are given full power, authority, and direction as said Trustees to subdivide into lots and sell and convey a good marketable title in fee simple such portion thereof as in their best judgment and discretion will enure to the best interest of the trust estate and its beneficiaries. The court is further of the opinion that the provisions of said will do not require the Trustees in the exercise of their best judgment and discretion to first sell the 'Harris Place' or to first subdivide into lots and sell any portion thereof, if in the best judgment and discretion of the Trustees it becomes necessary to sell any of the real estate, for that the testator merely expressed a wish and desire that if it became necessary in the judgment of the Trustees to sell any of the real estate that the Trustees first sell the Harris Place, and that such wish and desire is not mandatory on the Trustees, if in the best judgment and discretion of the Trustees it will be to the advantage of the trust estate and its beneficiaries to sell other portions of said real estate.

"IT IS NOW, THEREFORE, ORDERED, ADJUDGED AND DECREED as follows:

"That the deed dated May 10, 1963, of Robert Rouse and Margaret Lewis Rouse, Trustees of the trust estate created under the Will of J. C. Lewis, deceased, and joined in by Robt. Rouse and wife, Margaret Lewis Rouse, individually, and Nora Mae Sutton Lewis, widow, to William W. Kennedy, and wife, Meta Mae Kennedy, and duly executed by the said grantors and tendered to the said purchasers, conveys a good marketable title in fee simple to the said lot of land described therein, and subject only to the convenants and restrictions set out in said deed, and that the said defendants, William W. Kennedy and wife, Meta Mae Kennedy, grantees therein named, be and they are hereby required to accept the said deed conveying the lands therein described and to pay the purchase price as therein set out."

The defendants appeal, assigning error.

*Whitaker & Jeffress for plaintiff appellees.*
*R. S. Langley for defendant appellants.*

DENNY, C.J.   The only assignment of error is to the judgment entered below.

The appellants contend that in view of the following provision in the last will and testament of J. C. Lewis, to wit, "If it becomes necessary in the judgment of my Trustees to sell any of the real estate, it is my wish and desire that the farm lands known as the 'Harris Place' be first sold to provide the necessary funds to carry out the purposes of this trust," the trustees are not empowered to subdivide and sell any portion of the "Homeplace," or the "Lettie Taylor Place," until after the "Harris Place" has been sold.

The testator clearly expressed the desire that his trustees should not sell any of his farm lands unless it became necessary to do so in order to carry out the purposes of the trust. It has been determined that the rents from the farms which constitute the principal assets of the trust are insufficient to carry out the purposes of the trust. Furthermore, it appears from the findings of fact that by subdividing and selling a small portion of the "Homeplace," consisting of only 15 residential lots fronting on North Carolina paved Highway 58, located across the highway from Southwood School, which is one of Lenoir County's consolidated schools, the financial requirements of the trust will be met and the farming operations of the trustees will not be materially affected. The "Homeplace" is situate near the City of Kinston.

The trustees are expressly empowered "to subdivide and develop said property, or any part thereof into subdivisions for the sale of lots." The location of land adjacent to an improved highway has a great deal to do with its desirability and sale value as a subdivision. No doubt the decision to subdivide the particular land involved herein was influenced by its location adjacent to a hard surfaced highway, its accessibility to a consolidated public school, and its nearness to the City of Kinston.

In view of the broad powers vested in the trustees to hold, manage, and dispose of said lands in accord with their best judgment and in their discretion, for the uses and purposes set forth in Item V of said will, creating the trust estate, we hold that the "wish and desire" expressed with respect to the disposition of the "Harris Place," were merely precatory words and did not constitute a testamentary disposition of the property or a mandatory request with respect to the priority of disposition.

In 54 Am. Jur., Trusts, Section 55, page 65, it is said: " * * * (T)he English and American majority rule is that precatory words are presumably indicative of no more than a request or an expectation, and do not create a trust unless the context or the surrounding circumstances at the time of the making of the trust instrument show that the trustor, although he used the language of request, really meant to leave the trustee (devisee, legatee, or legal donee) no option in the matter," citing *Carter v. Strickland,* 165 N.C. 69, 80 S.E. 961, Ann. Cas. 1915D 416. This case has been cited many times with approval by this Court. See *Hardy v. Hardy,* 174 N.C. 505, 93 S.E. 976; *Laws v. Christmas,* 178 N.C. 359, 100 S.E. 587; *Springs v. Springs,* 182 N.C. 484, 109 S.E. 839; *Brinn v. Brinn,* 213 N.C. 282, 195 S.E. 793; *In re Estate of Bulis,* 240 N.C. 529, 82 S.E. 2d 750; *Andrew v. Hughes,* 243 N.C. 616, 91 S.E. 2d 591. *Cf. Moore v. Langston,* 251 N.C. 439, 111 S.E. 2d 627.

In *Springs v. Springs, supra,* this Court said: "It is true that under the old English decisions, which were followed by a few of the early cases in this country, the expression of a wish by the testator, like that of a sovereign, was construed as a command, but all the later cases, both in England and in this country, repudiate the doctrine, and hold that in the absence of a clear indication of a contrary intent, expressions of 'wish,' 'desire,' etc., are to be taken as used in their commonly accepted sense, and are not to be artifically construed by the courts as a trust."

We hold that upon the delivery of the deed heretofore tendered to the defendants, and payment of the purchase price agreed upon, the defendants will have a good and indefeasible fee simple title to the premises conveyed.

Therefore, the judgment entered by the court below is in all respects

Affirmed.